UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81140-CIV-MIDDLEBROOKS/VITUNAC

|  |  |
|---|---|
| LATRISA BELL, | ) |
|         Plaintiff, | ) |
|  | ) |
|    v. | ) |
|  | ) |
| SCULLY COMPANY, and | ) |
| PEGGY A. LUGO, individually, | ) |
|         Defendants. | ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendants, Scully Company and Peggy A. Lugo (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, move for summary judgment seeking dismissal with prejudice of Plaintiff's Amended Complaint alleging pregnancy discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e-(k) ("PDA") (Count I), disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count II), race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII") (Count III), retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq.* ("FMLA") (Count IV); handicap discrimination in violation of the Florida Civil Rights Act, Chapter 760, *Fla. Stat.* ("FCRA") (Count V), and race discrimination in violation of the FCRA (Count VI). As demonstrated by the deposition testimony, affidavit, and documents submitted herein, Plaintiff cannot prove a *prima facie* case of discrimination or retaliation under any of these laws, and summary judgment is appropriate.

## PRELIMINARY STATEMENT[1]

Plaintiff worked for Scully Company (Scully") for approximately eight (8) years. She worked as an Assistant Community Manager from 2002 until 2005, when she voluntarily resigned to work with another property management company. Several months later, Peggy Lugo ("Lugo"), Scully's Regional Property Manager who oversees the Florida communities,

---

[1] Pursuant to S.D. Fla. L.R. 56.1(a), Defendants have submitted a detailed Statement of Undisputed Facts ("SOF") supported by deposition excerpts, affidavits, and exhibits, all of which have been filed concurrently with this Motion.

recruited Plaintiff back to Scully.  Lugo offered Plaintiff an Assistant Community Manager position at a higher rate of pay than what was budgeted for the position.  Lugo made this offer to Plaintiff because of Plaintiff's skills, her respect for Plaintiff's work, and Plaintiff's proven experience with Scully. Throughout the years that they worked together, Lugo gave Plaintiff positive performance evaluations and salary increases.  In 2006, Lugo promoted Plaintiff to the position of Community Manager of the Crystal Palms community.  As Community Manager, Plaintiff was responsible for the day-to-day operations and overall performance of the community, as well as for supervising and training the community's staff.  Lugo continued to give Plaintiff pay increases and positive performance reviews and referred to Plaintiff as one of her strongest managers.   The feeling was mutual, as demonstrated by Plaintiff's Employee Comment on her January 15, 2008 review stating "I love working for the Scullys and working with Peggy . . . she is a true inspiration and role model."  It is undisputed that Plaintiff was Black when Lugo recruited and rehired her; she was Black when Lugo promoted her; she was Black when Lugo gave her pay increases; and she was Black when Lugo gave her positive performance reviews.  Plaintiff's race never changed.

        In March 2009, Plaintiff notified Scully she was pregnant.  During that year, Plaintiff's job performance declined, as did the performance of the community she managed. Lugo verbally counseled Plaintiff on her performance issues, but her performance did not improve.  After Plaintiff failed to call in or show up for work for three consecutive days on July 1, 2, and 3, 2009, Lugo issued Plaintiff a write-up addressing the infraction along with issues that occurred in the prior few months.  The purpose of the write-up was to help Plaintiff recognize that she needed to improve her performance.  Plaintiff suffered no adverse employment action as a result of the write-up.  She was not demoted, her pay was not decreased, her job duties did not change, and there were no changes in the terms, conditions or privileges of her employment.

        Thereafter, Plaintiff's neglect of the community became more apparent.  In late July 2009, it was discovered that Plaintiff had not been moving vacant apartments out of the system so that they appeared occupied.  Thus, the occupancy rate, which already was at an "all time low," was worse than originally thought.  Many of those apartments were discovered in deplorable conditions containing trash, rotting food, water damage, and mold.  Plaintiff had instructed her employees not to "trash out" the apartments or to move them out of the system.

Because those apartments showed up as occupied in the system, they were not being rented or bringing in revenue.

In October 2009, the Crystal Palms office was closed and relocated to the model while mold remediation and renovations were made.  Shortly before the office was moved, Plaintiff began her maternity leave.  During the move, the extent of Plaintiff's gross negligence and neglect of the community was revealed.  Numerous documents were discovered in Plaintiff's desk drawers and office dating back to 2006, including, among other things: (1) more than 30 collections notices sent to Crystal Palms for unpaid water bills; (2) uncashed tenant rent and vendor refund checks, some of which were still in sealed envelopes; (3) documents indicating that a lawsuit had been filed by a vendor against Crystal Palms for unpaid invoices (which led Scully to learn a judgment had been entered and a $7,800 lien placed on the property, and that a settlement offer of $4,000 had been conveyed to Plaintiff before the judgment was entered); 4) documents indicating that tenants who had not paid their rent were not placed in collections; (5) documents indicating that claims were not placed on the surety bonds for units where residents left owing money; and (6) numerous old, unpaid invoices from vendors, many of which still were in sealed envelopes and continued to accrue late fees.  Day by day, while Plaintiff was on leave, Scully discovered new issues demonstrating the depth of Plaintiff's neglect and failure to perform her job duties, as new notices continued to arrive in the mail and numerous calls were received from various collections agencies.

In December 2009, Scully called its counsel to determine how best to handle the issues with Plaintiff on leave.  The decision was made to wait until after the holidays and after Plaintiff returned from her leave to question her about what was discovered.  Because of her tenure with the company and, frankly, the shock from the magnitude of the issues discovered, Scully wanted to give Plaintiff an opportunity to explain what was found.  If she could not give any plausible explanation, her employment would be terminated for gross neglect of the asset she managed – the Crystal Palms community.  Upon her return to work, on January 6, 2010, Plaintiff was confronted with the issues.  She had no explanation for any of them.  Plaintiff barely spoke at all during the meeting and admittedly was non-responsive when asked for an explanation. Consequently, her employment was terminated for failure to perform her job duties.

Plaintiff now claims that her employment was terminated because she was discriminated and retaliated against by Lugo based on her race, pregnancy, disability (asthma),

3

and for taking FMLA leave.  Based on the undisputed facts in the case, these claims fail as a matter of law because Plaintiff (1) cannot point to a single similarly situated employee who was treated more favorably; (2) cannot demonstrate she was qualified for her job or that she performed her duties satisfactorily; (3) cannot demonstrate she is a qualified individual with a disability or that she requested a reasonable accommodation; and (4) cannot prove that Scully's legitimate business reasons for the termination of her employment are a pretext. Because the undisputed record evidence demonstrates that Plaintiff cannot establish a *prima facie* case of discrimination or retaliation as a matter of law, summary judgment is appropriate, and Plaintiff's Amended Complaint should be dismissed with prejudice.

## MEMORANDUM OF LAW

## SUMMARY JUDGMENT STANDARD

"A motion for summary judgment should be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Delgado v. U.S. Dep't of Transp., 709 F. Supp. 2d 1360, 1364 (S.D. Fla. 2010) (citing Fed. R. Civ. P. 56(c)).  "By its very terms, this standard provides that 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine issue of material fact.'" Delgado, 709 F. Supp. 2d at 1364 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is "material" if it might affect the outcome of the case under the governing law. Id.  (citations omitted).  Plaintiff "may not simply rest upon the allegations of her Amended Complaint.  Rather, she has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment." Jeudy v. Holder, No. 10-22873-CV, 2011 U.S. Dist. LEXIS 128746, at *10 (S.D. Fla. Nov. 7, 2011) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  "If the evidence advanced by the non-moving party is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 242, 249-50.

### POINT I

### THE UNDISPUTED FACTS DEMONSTRATE PLAINTIFF CANNOT PROVE A PRIMA FACIE CASE OF PREGNANCY, DISABILITY, OR RACE DISCRIMINATION

In Counts I, II, III, V and VI of her Amended Complaint, Plaintiff alleges she was discriminated against based on her pregnancy, disability, and race under Title VII (PDA), the ADA and the FCRA.[2] Plaintiff's deposition testimony, however, establishes that she cannot prove a *prima facie* case of discrimination.

### Standard of Review for Discrimination Claims

Because Plaintiff has no direct evidence of discrimination,[3] she must rely upon the "burden shifting analysis in Title VII disparate treatment discrimination cases based on circumstantial evidence." Pearson v. Peake, No. 08-22304-CV, 2010 U.S. Dist. LEXIS 24934, at *12 (S.D. Fla. Jan. 6, 2010). Plaintiff is required to first make a *prima facie* showing of discrimination. Id. at *13. If she succeeds, the burden shifts to Scully to articulate a legitimate, non-discriminatory reason for its employment decision. Id. Scully's burden at the rebuttal stage, which is one of production rather than proof, is "exceedingly light." Id. (citation omitted). Once Scully articulates a legitimate reason for its adverse employment action, the presumption against Scully is rebutted, and Plaintiff must come forward with evidence that the reason is pretextual. Id. As explained in Point III, page 19 below, "[t]his requires 'significant probative evidence' of pretext, not mere conclusory allegations." Lockett v. Choice Hotels Int'l, Inc., 315 Fed. Appx. 862, 868-69 (11th Cir. 2009).

### A.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF PREGNANCY DISCRIMINATION

In order to establish a *prima facie* case of pregnancy discrimination, Plaintiff must demonstrate: (1) she was pregnant (a member of a protected class); (2) she was performing her

---

[2] Federal case law analyzing Title VII claims is applicable to claims brought under the FCRA. See Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999). Courts also analyze claims of disability discrimination under the same standard for ADA and FCRA claims. Rodgers v. Time Customer Serv., No. 8:10-cv-263-T-27MAP, 2011 U.S. Dist. LEXIS 58155, at *11 (M.D. Fla. May 5, 2011); Luna Walgreen Co., 347 Fed. Appx. 469, 471 (11th Cir. 2009).

[3] "[O]nly the most blatant remarks whose intent could be nothing other than to [discriminate]" constitute direct evidence. See Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).

duties satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably.[4]  Slater v. Progress Energy Serv. Co., LLC, 2010 U.S. Dist. LEXIS 101060, * 16 (M.D. Fla. Sept. 24, 2010); Clay v. Holy Cross Hosp., 253 F.3d 1000, 1005 (7th Cir. 2001). Plaintiff testified the only person at Scully who discriminated against her was Lugo.  SOF, ¶ 60.  Plaintiff's allegations against Lugo, even when viewed in the light most favorable to Plaintiff, fail to state a *prima facie* case of pregnancy discrimination because her complaint is that Lugo *treated other pregnant employees favorably*. SOF, ¶¶ 81-82. She admits she cannot point to any similarly situated employees who were treated better.  Moreover, the overwhelming and undisputed evidence shows that Plaintiff was not performing her duties satisfactorily.

### 1.     The Undisputed Facts Demonstrate Plaintiff Did Not Perform Her Job Duties Satisfactorily

In the Eleventh Circuit, the law is clear:  If a plaintiff fails to perform her job duties in a satisfactory manner, she cannot establish a case of pregnancy discrimination.  See Slater v. Energy Servs. Group, Int'l, 441 F. App'x. 637, 640 (11th Cir. 2011) (affirming summary judgment on pregnancy discrimination claim where the record evidence demonstrated that plaintiff failed to perform her job adequately.); Armindo v. Padlocker, Inc., 209 F.3d 1319, 1321 (11th Cir. 2000) (affirming summary judgment on pregnancy discrimination claim where evidence demonstrated Plaintiff was terminated for attendance issues, and PDA does not require giving preferential treatment to pregnant employees if same treatment is not given to non-pregnant employees); see also, Armstrong v. Flowers Hosp., 33 F.3d 1308 (11th Cir.1994).

Here, there is no dispute that Plaintiff failed to perform her job duties as Community Manager.  The list of job duties and the type of job duties that Plaintiff failed to perform is overwhelming, shocking, and demonstrates her gross neglect of the community she managed.  These duties include, but are not limited to, (1) ignoring "massive amounts" of collections notices sent to Crystal Palms by the City of Boca Raton for unpaid water bills; (2)

---

[4] Defendant notes that in pregnancy discrimination cases, if a plaintiff can prove her termination violated the employer's policy, she is not required to identify a specific non-pregnant comparator.  Byrd v. Lakeshore Hosp., 30 F.3d 1380, 1383 (11th Cir. 2004) (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than her sick time allotted under company policy). Plaintiff cannot do so here, as she was terminated for failure to perform her job and gross neglect of the community she managed.  SOF, ¶ ¶ 40-44, 48-49.

failing to cash or deposit tenant rent and vendor refund checks and cashier checks for years; (3) ignoring that a lawsuit had been filed by HD Supply against Crystal Palms for unpaid invoices; (4) failing to tell anyone at Scully about the lawsuit and that the lawsuit could have been settled for $4,000, nearly half of what it ultimately cost Scully to remove the lien ($7,800); (5) failing to place tenants who had not been paying their rent in evictions; (6) failing to place claims on the interest deposit for tenant units (meaning the residents left owing money, they had a surety bond, and Scully should have cashed in the bond for the money it had to spend fixing the units); (7) failing to move vacant apartments out of the system so that they continued to appear occupied when they were not; (8) failing to make those vacant apartments move-in ready so that they could be rented to new tenants (leaving them with trash, rotting food, water damage and mold); and (9) failing to pay numerous invoices from numerous different vendors, which continued to accrue late charges. SOF, ¶ ¶ 40-44, 48-49. **Any *one* of these issues, alone, would have been sufficient grounds for the termination of Plaintiff's employment**. Her actions and failure to perform her job cost Scully upwards of $20,000. SOF, ¶ 49; Scully Dep. 83:1-12; 85:2-86:6-90.

"Approximately a week or so after [Plaintiff] went on leave, day by day [Scully was] discovering gross issues with the administration and management of the community. And one issue would come in at a time and [Monique Christy, Human Resources Director] would get phone calls relaying information about the discovery of massively delinquent bills and collections and unopened water bills, unopened rent checks, unopened deposits . . .On a daily basis things would trickle in and issues would be discovered." Christy Dep.154:15-155;146:1-11.

"During the month of November after [Scully] had discovered the certain issues, the unopened water bills that had gone to collections, the eviction notices that hadn't been served on tenants that we had to start the process over again that we discovered had gone back to as early as 2007, I believe, when we discovered the lawsuit that we had not been made aware of that ended up going to judgment for $8,000 and it could have been settled for $4,000 if we had advanced warning or notice or been able to reply to it. When all of these things started adding up, one by one, I told Peggy, as well as Sonia and Mark to, you know start itemizing everything, go through the boxes of paperwork that they found. And then I believe at some point in November, the office that had been remediated for mold, was unsealed. And at that point when they returned to the office and had access to [Plaintiff's] desk again, they came across a drawer full of envelopes that were unopened and additional refund checks, other things that had not been

opened, not been processed, had not been taken care of that nobody was aware of until we discovered them in the office.  And that's when I told Peggy to get everything itemized, put a list together of all of the information we found, and we contacted our attorney because of the egregious nature of the negligence."  Christy Dep. 150:18-151:20.

Moreover, before Plaintiff began her maternity leave, it was discovered that she had not been moving vacant apartments out of the system (so they appeared occupied and inflated the community's occupancy rate), and that those apartments had been sitting for months with trash, rotting food, water damage, and mold.  SOF, ¶ ¶ 40-43.  Because Plaintiff is unable to demonstrate that she was performing her job duties satisfactorily, her claim of pregnancy discrimination fails as a matter of law.  See Slater, 441 F. App'x. at 640; see also, Clay, 253 F.3d at 1005 (a plaintiff cannot establish a *prima facie* case for pregnancy discrimination where she is unable to demonstrate that she was performing her job duties satisfactorily).

### 2. The Undisputed Facts Demonstrate Plaintiff Cannot Point to Any Similarly Situated Non-Pregnant Employee Who Was Treated More Favorably

Plaintiff admits she cannot identify any similarly situated non-pregnant employees who Lugo treated more favorably.  Pl. Dep. 365:22-366:2.  Instead, Plaintiff complains that Lugo treated *other pregnant employees* at Scully more favorably.  SOF, ¶ ¶ 81-82. Plaintiff testified that Jill Greco ("Greco"), the Community Manager of another Florida Scully property, was treated more favorably by Lugo during her pregnancy.  Id.  These facts are fatal to Plaintiff's claim.  To prove her claim, Plaintiff must demonstrate that similarly situated *non-pregnant* employees were treated more favorably. Armindo, 209 F.3d at 1321 (affirming summary judgment where plaintiff failed to show that similarly situated non-pregnant employees were treated more favorably);  Reed v. Inland Intermodal Logistics Servs., 2011 U.S. Dist. LEXIS 112258, *28 (W.D. Tenn. Sept. 29, 2011) (by comparing herself to a member of her protected class, plaintiff failed to show she was treated differently than similarly situated non-protected employees, and her claim "must fail.") (citations omitted).  Plaintiff's own testimony demonstrates that Scully (and Lugo in particular) does not discriminate against women based on pregnancy because, according to Plaintiff, Grecco was pregnant and she was treated well.  Pl. Dep. 323:19-25.  Accordingly, as Plaintiff has not and, Defendants submit, cannot identify a

similarly situated non-pregnant employee who was treated more favorably, Plaintiff's claim of pregnancy discrimination fails as a matter of law.

### 3.   The Undisputed Facts Demonstrate the "Harassment" Plaintiff Alleges Does Not Constitute Adverse Employment Actions

Defendant does not dispute that the termination of Plaintiff's employment constitutes an adverse employment action.  However, Plaintiff also argues that she suffered the following adverse employment actions after she notified Lugo of her pregnancy (and because of her pregnancy): (1) her workload was increased; (2) on one occasion Lugo allegedly used "offensive" language towards her; and (3) she was issued a written warning for unsatisfactory job performance.  None of these actions constitute an adverse employment action.  "Not all conduct by an employer negatively affecting an employee constitutes an adverse employment action" for the purposes of establishing a *prima facie* case of discrimination. Amos v. Tyson Foods, Inc., 153 Fed. Appx. 637, 644 (11th Cir. 2005);  Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001).  For a plaintiff to establish a *prima facie* case of discrimination, and to then succeed on a discrimination claim, an employee must show that the employment decision seriously and materially affected the terms of her employment. Id. at 1239; Matias v. Sears Home Improvement Prods., 391 Fed. Appx. 782, 785-86 (11th Cir. 2010). "In order to qualify as an adverse employment action, an employer's action falling short of an ultimate employment decision must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive her of employment opportunities, or adversely affect her status as an employee." Id. (citation omitted).  Additionally, "**the asserted impact cannot be speculative and must have a tangible adverse impact on plaintiff's employment as viewed by a reasonable person in the circumstances**. Id. (emphasis added).  Plaintiff's "subjective view of the significance and adversity of the employer's action is not controlling." Amos, 153 Fed. Appx. at 644.

Specifically, Plaintiff claims Lugo increased her workload by asking her to (1) prepare the budgets that already were part of her job as Community Manager; (2) schedule a renovation project, which required her to do nothing more than send a fax to a vendor; (3) look at the renovations to make sure Scully was given the product it was paying for; (4) send the renovation bill to corporate for payment; (5) look at a new storm drain to see if there were any gaps so that it would not cause damage to vehicles in the area; (6) complete the move-out

paperwork for the apartments that were vacant but showing as occupied in the system; and (7) look at the new doors to make sure they were properly installed.  SOF, ¶ 84.  Aside from the fact that these tasks were part of Plaintiff's regular job duties (Pl. Dep. 242-246), an increase in workload does not constitute an adverse employment action.  <u>Davis</u>, 245 F.3d at 1244 ("[c]hanges in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour change."); <u>McGuire v. Miami-Dade County</u>, 418 F. Supp.2d 1354, 1360 (S.D. Fla. 2006) ("increased workloads are not adverse employment actions but rather an ordinary tribulation of the workplace for which employees should expect to take responsibility.")

 Plaintiff also claims she was subjected to profanity and offensive language on one occasion when Lugo allegedly told her "you're full of shit."  SOF, ¶ ¶ 85-86.  Even if this claim is true, the comment does not constitute an adverse employment action. <u>Amos v. Mobile County Health Dep't</u>, 767 F. Supp. 2d 1257, 1272 (S.D. Ala. 2011) ("[u]npleasant and undeserved though it may be, a supervisors yelling or fussing is not an adverse employment action.  Title VII is not a general civility code."); <u>Givens v. Chambers</u>, 548 F. Supp. 2d 1259, 1271 (M.D. Ala. 2008) (finding that plaintiff being yelled at did not constitute an adverse employment action)).

 Finally, Plaintiff claims she was written up for performance issues because of her pregnancy.  Plaintiff was written up for (1) failing to call in or show up for work for three consecutive days on July 1, 2 and 3, 2009; (2) lack of preparation for a student housing fair (akin to a tradeshow) which caused embarrassment to the company and the employees who attended the event; (3) failing to follow Lugo's instructions to recognize the maintenance supervisor for winning a prestigious competition on behalf of Scully; (4) overuse of temporary employees and failing to stabilize staff with permanent employees; and (5) not being accessible to residents, vendors and staff members by, *inter alia*, refusing to see them unless they had an appointment. SOF, ¶ ¶ 18-33.  Lugo verbally discussed these issues with Plaintiff, but they continued.  SOF, ¶ 17.  It was only after Plaintiff violated policy by failing to call in or show up for work on the three busiest days of the month that Lugo's supervisor, Jessica Scully, insisted that Lugo issue Plaintiff a written warning. SOF, ¶ 18.  The purpose of the write-up was to help Plaintiff recognize that she needed to improve her performance.  SOF, ¶ 19.  Plaintiff suffered no adverse employment action as a result of the write-up.   SOF, ¶ 20.  She was not demoted, her pay was

not decreased, her job duties did not change, and there were no changes in the terms, conditions or privileges of her employment.   Id.   Because the write-up did not "impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way," it does not constitute an adverse employment action.   Davis, 245 F.3d at 1239, 1240-46 (holding that an employer's placement of negative job performance memoranda in an employee's personnel file did not constitute an adverse employment action); Joseph v. Fla. Quality Truss Indust., Inc., Case No. 05-61045-CV, 2006 U.S. Dist. LEXIS 88254, *44 (S.D. Fla. 2006).

Accordingly, Plaintiff cannot establish a *prima facie* case of pregnancy discrimination and, therefore, her claim fails as a matter of law.

**B.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RACE DISCRIMINATION**

To establish a *prima facie* case of race discrimination under Title VII and the FCRA, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected group did not suffer the same adverse action.   See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).   Plaintiff cannot establish prongs two and four of the analysis.   First, her alleged comparators are not similarly situated because, *inter alia*, they were her subordinates and did not commit any of the infractions for which Plaintiff was disciplined or terminated.   Second, Plaintiff was not qualified for the position, as described above.

**1.   Plaintiff's Alleged Comparators Are Not Similarly Situated**

As an initial matter, summary judgment is warranted on Plaintiff's race discrimination claims because she has failed to identify a single similarly situated comparator. To make the requisite showing in the Eleventh Circuit, a comparator must be "similarly situated in all relevant respects."   See Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) "The comparator must be nearly identical to the plaintiff to prevent courts form second-guessing a reasonable decision by the employer."   Wilson v. B/E Aero., Inc., 376 F. 3d 1079, 1091 (11th Cir. 2004); Jiles v. United Parcel Serv., Inc., 360 F. App'x. 61, 65 (11th Cir. 2010) (comparators must be nearly identical in all relevant respects including experience and background). This requires Plaintiff to establish that she had the same or similar job duties and responsibilities to those individuals identified as comparators, and that the comparators were

involved in, or accused of, the same or similar conduct, but not disciplined in the same manner. See Lee v. United States Steel Corp., 450 F. App'x. 834, 840 (11th Cir. 2012) (holding that the identified comparators must have similar job duties and responsibilities to be considered "similarly situated" for purposes of establishing a race discrimination claim); Silvera v. Orange Cty. School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (to satisfy the similar offense prong, the identified comparator's misconduct must be nearly identical to the plaintiff's); Dawson v. Miami-Dade County, No. 07-20126-CIV, 2008 U.S. Dist. LEXIS 38185, at *30 (S.D. Fla. Mar. 10, 2008) ("Plaintiff must show that the comparator is similarly situated in terms of conduct, performance, and qualifications, and that no differentiating or mitigating circumstances distinguish their situations.").

Plaintiff cannot make the requisite showing here. Plaintiff, the Community Manager, has identified four of her *subordinate* employees as her comparators: (1) Maikel Delgado (maintenance supervisor); (2) Jose Aguilar (maintenance supervisor); (3) Elizabeth Sorrentino (leasing consultant); and (4) Sonia Rojas (assistant manager). SOF, ¶ 11, 61. None of these individuals are "similarly situated" to Plaintiff because they were her subordinate employees. SOF, ¶ ¶ 11, 63, 66; See Hammons v. George C. Wallace State Cmty. College, 174 Fed App'x 459, 461-62 (11th Cir. 2006) (affirming the district court's finding that an individual identified by the plaintiff as a comparator was not similarly situated because, *inter alia*, he was the plaintiff's subordinate). Id. at 463 In Hammond, the Eleventh Circuit affirmed the district court's grant of summary judgment finding the plaintiff's "comparators" were not similarly situated because one individual was the plaintiff's subordinate and another was responsible for a different department. Id.

Here, Plaintiff claims Lugo treated Delgado, Aguilar, Rojas and Sorrentino more favorably because they are Hispanic claiming "they're never reprimanded for anything," whereas Plaintiff was written up by Lugo for performance issues. SOF, ¶ 65. However, it is undisputed that Plaintiff - not Lugo - supervised Aguilar, Delgado, Sorrentino and Rojas. SOF, ¶ ¶ 11, 66. It is undisputed that Plaintiff - not Lugo - was responsible for disciplining or "reprimanding" the employees that Plaintiff supervised for performance issues. SOF, ¶ 66. "Courts in this district have found that similarly situated employees '**must have reported to the same supervisor as the plaintiff,** must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such

differentiating conduct that would distinguish their conduct or the appropriate discipline for it.'" St. George v. Advance Stores Co., Case No. 10-60036-CV, 2011 U.S. Dist. LEXIS 140237, *13 (S.D. Fla. Dec. 6, 2011) (citing Cabrera v. LaHood, 2011 U.S. Dist. LEXIS 69617 *8 (S.D. Fla. June 29, 2011).   None of Plaintiff's alleged comparators were employed as a Community Manager during the time period at issue.  SOF, ¶ ¶ 62, 64.  **However, it is undisputed that Lugo did terminate three similarly situated non-Black Community Managers for the same reason Plaintiff's employment was terminated - failing to adequately perform their job duties.** SOF, ¶ 67.

Even if Plaintiff could establish that Aguilar, Delgado, Sorrentino and Rojas reported to Lugo and had the same job duties and responsibilities (which her own testimony demonstrates she cannot do), her claim still fails because none of them committed any of the performance infractions for which Plaintiff was disciplined or terminated.  In fact, they could not have committed the same infractions as Plaintiff because they held entirely different jobs with entirely different job duties and responsibilities.  SOF, ¶ 11, 64,; Silvera, 244 F.3d at 1259; Dawson, 2008 U.S. Dist. LEXIS at *30.

Accordingly, because Plaintiff cannot proffer any evidence that the non-Black employees to whom she compares herself "were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which she was discharged," her race discrimination claims fail as a matter of law. See Holifield, 115 F.3d at 1562-63; Lee, 450 F. App'x. at 840 (affirming summary judgment on behalf of employer where plaintiff was unable to identify any comparator who had the same or similar job duties as plaintiff); Bentley v. Orange County, Florida, 445 F. App'x. 306, 309 (11th Cir. 2011) (affirming summary judgment where plaintiff failed to identify any comparator who had committed "nearly identical" misconduct).

## 2.      Plaintiff Was Not Qualified for the Position

In determining whether or not an employee was qualified for the job, courts look to the employee's actual performance.  See Silverstein v. Metroplex Communications, Inc., 678 F. Supp. 863 (S.D. Fla. 1998); McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990). The employee must show that she was performing her job "at a level which met her employer's legitimate expectations." McDonald, 898 F.2d at 1160; Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1520 (11th Cir. 1990) (recognizing an employer's right to establish and enforce performance standards regarding the qualification prong). Here, there is a well

documented record of serious infractions committed by Plaintiff.  Based on Plaintiff's gross mismanagement of the community and egregious performance issues described on pages 6-8 above, Plaintiff clearly was not qualified for the position of Community Manager.  See Pages 6-8, *supra*.  Thus, even if Plaintiff could identify a similarly situated comparator, she cannot establish a *prima facie* case of race discrimination, and her claim fails as a matter of law.

### C.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION

Plaintiff alleges that she was diagnosed with asthma on July 3, 2009.  SOF, ¶ 69.  During her employment with Scully, Plaintiff did not suffer from asthma "on a constant basis," rather, she had "occasional flare-ups."  SOF, ¶ 70.  Plaintiff took medication for her asthma on an "as needed basis" in her office or "wherever [she] needed it . . . whenever [she] had a flare-up."  SOF, ¶ 71.  During her employment with Scully, the only personal, everyday activity that Plaintiff's asthma affected was her ability to "workout" and "exercise."  SOF, ¶ 72.  There were no job duties that she could not perform because of her asthma.  SOF, ¶ 73.  In fact, Plaintiff cannot recall any time when she was unable to perform a job duty at Scully because of her asthma.  SOF, ¶ 74.  The only "accommodation" Plaintiff recalls requesting was help preparing the annual budgets.  SOF, ¶ 75.  Plaintiff admits that her asthma did not affect her ability to prepare budgets.  SOF, ¶ 76.  Plaintiff alleges that her employment was terminated because she had a disability - asthma.  Amended Complaint,¶ 46.  However, Plaintiff's testimony demonstrates she cannot establish a *prima facie* claim of disability discrimination.

Despite the changes brought about by the ADAAA**,** the elements of a plaintiff's *prima facie* case of disability discrimination remain the same.[5]  See Barlow v. Walgreen Co., Case No. 8:11-cv-71-T-30EAJ, 2012 U.S. Dist. LEXIS 34026, *11 (M.D. Fla. Mar. 14, 2012).  Specifically, a plaintiff must show that she: (1) is disabled; (2) is a qualified individual; and (3) was unlawfully discriminated against because of her disability.  Id. (citing Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2000)) (citations omitted).  Here, Plaintiff's claim fails because she cannot establish the first, second or third prongs of the test.  Moreover, even if Plaintiff could establish a *prima facie* case of discrimination, the record reflects ample legitimate, non-discriminatory reasons in support of Defendant's termination of

_____

[5] Congress amended the ADA by enacting the ADA Amendments Act ("ADAAA") effective January 1, 2009.  See Pub. L. No. 110-325, 122 Stat. 3553.

Plaintiff's employment, and Plaintiff cannot demonstrate that the asserted reasons are merely pretext for discrimination.  Accordingly, Plaintiff's disability claim fails as a matter of law, and summary judgment is appropriate.

### 1.    Plaintiff's Testimony Establishes She is Not Disabled

Under the ADAAA, a disability is defined as, among other things, a "physical or mental impairment that substantially limits one or more of the major life activities of such individual."  Morales v. Ga. Dep't of Human Res., 446 Fed. Appx. 179, 182 (11th Cir. 2011); Barlow, 2012 U.S. Dist. at *11; 29 C.F.R. § 1630.2(g)(1)(i).  An impairment qualifies as a disability if: "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." Id.; 29 C.F.R. § 1630.2(j)(1)(ii).  Major life activities are defined as, among other things, performing manual tasks...seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, speaking,  breathing … 29 C.F.R. § 1630.2(i).

"[I]f asthma is severe enough to substantially limit an ability to work, it can be considered a disability under the ADA."  See Faison v. Edwards, Case No. 8:10-cv-1711-T-30MAP, 2011 U.S. Dist. LEXIS 1972, *5 (M.D. Fla. Jan. 5, 2011) (citation omitted).  Here, Plaintiff testified that there were no job duties at Scully that she could not perform because of her asthma.  SOF, ¶ 73.  In fact, Plaintiff cannot recall any time when she was unable to perform a job duty because of her asthma.  SOF, ¶ 74.  The only activity that Plaintiff claims her asthma affected during her employment with Scully was her ability to "exercise." SOF, ¶ 75.  Plaintiff testified that she is "possibly" disabled because of her asthma because "I can no longer exercise." SOF, ¶ 78.  Exercising was not one of Plaintiff's job duties at Scully.  Thus, it is undisputed that Plaintiff's occasional bouts of asthma did not substantially limit her ability to work.[6]

### 2.    Plaintiff's Testimony Establishes She is Not a Qualified Individual

"Whether Plaintiff is a 'qualified individual' under the ADAAA turns on the question of whether she is able to perform the essential functions of her job with or without reasonable accommodation." Barlow, 2012 U.S. Dist. at *15; 42 U.S.C. § 12111(8).  Here, Plaintiff admits there were no job duties at Scully that she could not perform because of her

---

[6] To the extent Plaintiff argues that during the occasional times she suffered from asthma she had difficulty breathing, the Eleventh Circuit has held that in such cases a plaintiff whose asthma is well treated with medication, like Plaintiff, fails to demonstrate the asthma is a disability under the ADA.   Wofsy v. Palmshores Retirement Comm., 285 F. App'x. 631, 634 (11th Cir. 2008) (holding that asthma is not a disability if well treated with medication).

asthma.  SOF, ¶ ¶ 73-74.  Moreover, Plaintiff admits she did not make any requests for a reasonable accommodation to enable her to perform the functions of her job.  SOF, ¶ ¶ 75-76. Similarly, Plaintiff has made no accommodation requests at her current employer (also a property management company) to enable her to perform her job.  SOF, ¶ 77. Plaintiff only recalls asking Lugo for help finishing the annual budgets.  SOF, ¶ ¶ 75-76.  However, Plaintiff admits that her asthma did not affect her ability to prepare the budgets.  Id.  Thus, Plaintiff is not a qualified individual because she was *unable* to perform the functions of her job with or without a reasonable accommodation.

### 3.    Plaintiff Cannot Prove Her Employment Was Terminated Because She Had Asthma_____

As explained in detail above, Plaintiff's employment was terminated for failure to perform her job duties, not because of a disability.  See Pages 6-8, *supra*. Moreover, Plaintiff's claim she was discriminated against because she has asthma is belied by the fact that Lugo, the purported discriminator, also is disabled.  SOF, ¶ 80.  Lugo suffers from medical conditions, including diabetes and a heart condition, which makes it difficult for her to perform major life activities such as breathing and walking.  Id.  "[C]ase law is clear that where the alleged discriminator and the plaintiff are members of the same protected class, there is an inference that no unlawful discrimination occurred.  See Wells v. Briggs Constr. Equip. Inc., No. 3:08-3634-JFA-PJG, 2010 U.S. Dist. LEXIS 76941, at *16 (D.S.C. May 12, 2010); see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (providing that the plaintiff faced a difficult burden of demonstrating pretext because "all of the primary players behind his termination" were in the same protected class). For all of the above reasons, Plaintiff cannot prove she was terminated because of her asthma.[7]

---

[7] Notably, Plaintiff admits she cannot identify any similarly situated non-disabled employees at Scully who committed the same performance infractions and were treated more favorably. SOF, ¶ ¶ 81.  This fact is fatal to her claim.  See Biggs v. Florida State Bd. Of Regents, 1998 U.S. Dist. LEXIS 21273, *13 (N.D. Fla. Oct. 28, 1998) (dismissing plaintiff's disability discrimination claim because plaintiff failed to identify any similarly situated non-disabled employees who were treated more favorably despite having engaged in similar misconduct.).

<u>POINT II</u>

### THE UNDISPUTED FACTS DEMONSTRATE PLAINTIFF CANNOT PROVE A PRIMA FACIE CASE OF RETALIATION UNDER THE FMLA

In Count IV of her Amended Complaint, Plaintiff alleges she was retaliated against for taking FMLA leave. Specifically, Plaintiff alleges she was harassed and her employment was terminated because she took maternity leave under the FMLA. The undisputed record evidence, however, demonstrates that Plaintiff cannot prove a *prima facie* case of retaliation.

#### <u>Standard of Review for FMLA Retaliation Claims</u>

To establish a claim of retaliation under the FMLA, an employee must demonstrate his employer intentionally discriminated against him for exercising a right guaranteed under the Act. <u>Lee v. United States Steel Corp</u>., 450 Fed. Appx. 834, 838 (11th Cir. 2012) (citing <u>Martin v. Brevard Cty. Pub. Sch</u>., 543 F.3d 1261, 1267 (11th Cir. 2008)). "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." <u>Id</u>. Absent direct evidence of retaliatory intent, the burden-shifting framework articulated in <u>McDonnell Douglas Corp</u>. explained on page 5 of this brief applies. <u>Id</u>. (citing <u>McDonnell Douglas Corp</u>. 411 U.S. at 792)). Here, there is no direct evidence of retaliation. Thus, Plaintiff must prove: (1) she engaged in statutorily protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. <u>Id</u>. (citing <u>Hulbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1298 (11th Cir. 2006)).

Plaintiff's claim fails as a matter of law because (1) she cannot establish a causal connection between her taking FMLA leave and the termination of her employment; and (2) the other actions Plaintiff complains of do not constitute actionable adverse employment actions.

#### A.    Plaintiff Has Failed to Prove a Causal Connection Between Her FMLA Leave and the Termination of Her Employment

Plaintiff alleges her employment was terminated in retaliation for taking FMLA leave, relying exclusively on the temporal proximity between the two events. However, "close proximity in time between the protected activity and the adverse employment decision does not,

standing alone, establish the third element of a *prima facie* case." See Rodriguez v. Univ. of Miami, 2011 U.S. Dist. LEXIS 92805, * 13 (S.D. Fla. 2011). Plaintiff ignores the overwhelming evidence of her gross neglect of the community and failure to perform her job duties discovered during her FMLA leave. This is not the first instance where an employee's performance infractions were discovered during their FMLA leave. See Schaaf v. SmithKline Beecham Corp., 602 F.3d 1236, 1242 (11th Cir. 2010) (affirming summary judgment where employer demoted plaintiff upon her return from FMLA leave for performance issues discovered during plaintiff's FMLA leave). In discussing the purpose of the FMLA, the Eleventh Circuit Court in Schaaf stated:

> . . . **the statute's purpose is not implicated in the least if an employee's absence permits her employer to discover past professional transgressions that then lead to an adverse employment action** against the employee. In such a situation, the employer is motivated not by the taking of the leave itself, but rather by prior deficiencies that, whenever they were discovered, would have prompted demotion or discharge whether or not the employee took FMLA leave. Moreover, future individuals who seek FMLA leave would have no reason to fear demotion or discharge upon their return, unless they, too, had been professionally deficient.

Schaaf, 602 F.3d at 1242. (emphasis added). Other courts have likewise recognized this distinction. For instance, in Kohls v. Beverly Enters. Wis., Inc., the employer discovered deficiencies in an employee's work while the employee was on FMLA leave. Id. (citing Kohls v. Beverly Enters. Wis., Inc., 259 F.3d 799, 806 (7th Cir. 2001). The Kohls court explained, "The fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee." Id. There, like here, that the FMLA leave allowed the employer to uncover prior deficiencies does not mean that the employee was fired *because of* the FMLA leave. Id. The district court for the Northern District of Georgia has applied similar logic. Id. (citing Wu v. Se.-Atl. Beverage Corp., 321 F. Supp. 2d 1317 (N.D. Ga. 2004)). In Wu, the district court explained, "[T]he fact that plaintiff's leave is what permitted [the employer] to discover the problems with plaintiff's work performance is of no consequence. Although one could say that plaintiff might not have been demoted if he had not taken leave (at least not at that time), the leave was not the proximate cause of the demotion." Id. at 1341.

Here, Plaintiff's employment was terminated because of the serious performance infractions discovered during her FMLA leave (see Pages 6-8, *supra*), not because she exercised her rights under the FMLA by taking the leave. While the issues may not have been discovered until a later date had she not taken the leave, this fact "is of no consequence" as Scully was motivated by Plaintiff's serious neglect of her duties and mismanagement of the community, not by her taking leave under the FMLA.

**B.     The Other Actions Plaintiff Complains of Do Not Constitute Adverse Employment Actions_____**

Defendant does not dispute that the termination of Plaintiff's employment constitutes an adverse employment action. However, Plaintiff also argues that she suffered adverse employment actions in retaliation for requesting to take FMLA leave because (1) her workload was increased; (2) on one occasion Lugo allegedly used "offensive" language towards her; and (3) she was issued a written warning for unsatisfactory job performance six months before her employment was terminated. Pl. Dep. 329:13-330:9; 336:16-342:5; Amended Complaint, ¶ 61. As explained in detail above, with supporting law, none of these actions constitute an actionable adverse employment action. See Pages 9-11, *supra*. Because Plaintiff cannot establish a *prima facie* claim of retaliation under the FMLA, summary judgment is appropriate.

**POINT III**

**PLAINTIFF CANNOT PROVE DEFENDANTS' PROFFERED REASONS FOR ITS ACTIONS ARE PRETEXTUAL_____**

Even if this Court determines that Plaintiff has established a *prima facie* case of discrimination or retaliation under any of the theories alleged in her Amended Complaint, her claims nevertheless fail because Defendants have met their burden of articulating a legitimate, non-discriminatory and non-retaliatory reason for the termination of her employment – her failure to perform her job duties and gross neglect of the community she managed. "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not the court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000); Malewski v. NationsBank of Fla., 978 F. Supp. 1095, 1096 (S.D. Fla. 1997) (defendant's only burden is to produce evidence of a legitimate non-discriminatory reason

for its employment decision).  Plaintiff must rebut these reasons with evidence that they are a pretext for unlawful discrimination or retaliation.  <u>Dawson v. Henry Cty. Police Dept.</u>, 238 Fed. Appx. 545, 549 (11th Cir. 2007) (Plaintiff must show that "the proffered reason is false and that discrimination is the real reason.").  "[I]n order to demonstrate pretext, a plaintiff may not merely disprove one of the employer's proffered legitimate reasons but instead must 'produce sufficient evidence for a reasonable fact finder to conclude that each of the employer's proffered reasons is pretextual.'"  <u>Edwards v. Niles Sales & Serv.</u>, 439 F. Supp. 2d 1202, 1230 (S.D. Fla. 2006) (citing <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)).

In the instant case, Plaintiff cannot prove that Defendants' reasons are a pretext:

> **Pretext 'means a dishonest explanation, a *lie* rather than an oddity or an error.'**  'A pretext for discrimination' means more than an unusual act; **it means something worse than a business error**; 'pretext means deceit used to cover one's tracks.' 'On the issue of pretext, our only concern is the honesty of the employer's explanation.'

<u>See</u> <u>Clay</u>, 253 F. 3d at 1005 (emphasis added).  Here, there is no dispute that numerous documents revealing Plaintiff's gross negligence and mismanagement of Crystal Palms were discovered in Plaintiff's office during her FMLA leave. SOF, ¶¶ 48-49. It is undisputed that Plaintiff never gave Scully any explanation for the issues upon her return. SOF, ¶ ¶ 53-56.

Furthermore, any allegation by Plaintiff of pretext is undermined by the fact that **Scully has identified similarly situated employees who were not disabled, not pregnant, not black, and who did not take FMLA leave, but who also were terminated by Lugo for the same reason Plaintiff's employment was terminated -** failure to adequately perform their job duties.  SOF, ¶ 67.  <u>See</u> <u>Palmer v. Albertson's LLC</u>, 418 Fed. Appx. 885, 888 (11th Cir. 2011) (finding plaintiff failed to prove pretext where employer showed similarly situated employees outside of plaintiff's protected class were terminated for the same or similar infraction). Plaintiff's employment was terminated for failure to perform her job and for no other reason. Plaintiff cannot prove that Scully's legitimate reason for her termination is a pretext.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an order granting summary judgment dismissing the Amended Complaint in its entirety, in addition to such other and further relief as the Court deems just and appropriate.

CASE NO. 11-81140-CIV-MIDDLEBROOKS/ VITUNAC

Dated:  April 23, 2012
       Miami, Florida

                                     Respectfully submitted,

                                     JACKSON LEWIS LLP
                                     One Biscayne Tower, Suite 3500
                                     2 South Biscayne Boulevard
                                     Miami, Florida 33131-2374
                                     Telephone: 305-577-7600
                                     Facsimile:  305-373-4466

By:    /s/  Jennifer A. Schwartz, Esq.
              Jennifer A. Schwartz, Esq.
              Florida Bar No. 502431
              *schwartzj@jacksonlewis.com*
              S. Jordan Rappaport, Esq.
              *jordan.rappaport@jacksonlewis.com*
              Florida Bar No. 0811041
              Attorneys for Defendants

## CERTIFICATE OF SERVICE

It is hereby certified that on the 23rd of April 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                       /s/  Jennifer A. Schwartz, Esq.
                                       Jennifer A. Schwartz, Esq.

CASE NO. 11-81140-CIV-MIDDLEBROOKS/ VITUNAC

## SERVICE LIST

LATRISA BELL VS. SCULLY COMPANY and PEGGY A. LUGO
CASE NO.: 11-81140-CIV-MIDDLEBROOKS/VITUNAC

G. Joseph Curley, Esq.
Florida Bar No.: 571873
Brian McPherson, Esq.
Florida Bar No.:735541
Tanya Reed, Esq.
Florida Bar No.: 0028306
Gunster, Yoakley & Stewart, P.A.
Phillips Point, East Tower
777 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
ATTORNEYS FOR PLAINTIFF
Via transmission of Notice of Electronic filing generated by CM/ECF

Jennifer A. Schwartz, Esq.
Florida Bar No.:  502431
E-mail:  *schwartj@jacksonlewis.com*
S. Jordan Rappaport, Esq.
*jordan.rappaport@jacksonlewis.com*
Florida Bar No. 0811041
Jackson Lewis, LLP
One Biscayne Boulevard
2 South Biscayne Boulevard
Miami, FL 33131
Telephone:  305-577-7600
Facsimile:  305-373-4466
ATTORNEYS FOR DEFENDANT
Via transmission of Notice of Electronic filing generated by CM/ECF